IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVA CARATTINI, | : | CIVIL ACTION |
| | : | NO. 08-5201 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WOODS SERVICES, INC. | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    FEBRUARY 4, 2010

## I.    INTRODUCTION

This is a case of alleged employment discrimination
based on a theory of hostile work environment and retaliation.

Plaintiff, Eva Carattini ("Carattini") was a client
care worker.  Defendant Woods Services, Inc. ("Woods"), is a not-
for-profit residential services facility providing 24-hour care,
education and training to children and adults with various types
of disabilities.  Plaintiff was employed by Woods from April 2007
to September 28, 2007.  Before the Court is Woods' motion for
summary judgment.  For the reasons that follow, the motion for
summary judgment will be granted.

## II. BACKGROUND

The crucial events around which the lawsuit revolves

occurred over a period of six days.[1]  During the six day period,

---

[1]     Carattini alleges that beginning in June 2007, until
the time of her resignation, she was subjected to inappropriate
sexual comments and conduct by her co-worker Ned Bangura
("Bangura").  Plaintiff admits that she did not report any of
these incidents to her supervisor or to Human Resources. (Def.'s
SOF at ¶ 39(a)-(k); Pl.'s SOF at ¶ 39(a)-(k).)  Because she did
not report any of these incidents to Woods' management, and there
is no evidence on the record that Woods' management was aware of
the alleged harassment, these incidents are not cognizable as a
basis for gender based discrimination or sexual harassment. See
Hitchens v. Montgomery County, 278 Fed. Appx. 233 (3d Cir.
2008)(non-precedential opinion) (judgment for employer affirmed
in co-worker harassment case where the plaintiff conceded that
she never reported the harassment to her employer, even though
she had knowledge of its harassment policy and reporting
procedure); Amati v. U.S. Steel Corp., No.04-1442, 2007 WL
3246850, at *19 (W.D. Pa. Nov. 2, 2007), aff'd 304 Fed. Appx.
131, 134 (3d Cir. 2008) (summary judgment affirmed where
employer, in a case of co-worker harassment, was not informed by
the plaintiff that a colleague asked her about sexual encounters
and fantasies, told her that she was sexy and voluptuous, stared
at her breasts, asked her to have an affair, rubbed the inside of
her thigh, grabbed her breasts, tried to kiss her and exposed
himself to her); Hodson v. Alpine Manor, Inc., 512 F. Supp. 2d
373, 383, 388 (W.D. Pa. 2007) (summary judgment to employer on
claim of co-worker harassment where the plaintiff never
complained to employer and she had been trained on corporate
policies about sexual harassment; Valenti v. Triangle Circuits of
Pittsburgh, Ins., 419 F. Supp. 2d 701, 708 (W.D. Pa. 2005)
(summary judgment for employer where plaintiff endured verbal
harassment for four months before reporting harassment and then
resigned rather than cooperate with investigation).

        The one incident involving Plaintiff's co-worker,
Nathaniel Bueale ("Bueale") that Plaintiff reported, in early
September 2007, Bueale allegedly approached her from behind,
grabbed her around her waist, picked her up off her feet and
rubbed against her body.  This incident is neither severe nor
pervasive (having occurred only once) in order to qualify as the
basis for a sexual harassment claim based on a hostile work
environment. See Shramban v. Aetna, 115 Fed. Appx. 578, 580 (3d
Cir. 2004) (non-precedential opinion) (summary judgment for
Defendant affirmed on plaintiff's claims that supervisor
repeatedly made offensive comments about her life, clothes,
appearance and inappropriately touched her under the guise of

Plaintiff was allegedly harassed by a co-worker and immediately reported the incident to her supervisor, was interviewed twice by Woods' management, filed two EEOC complaints and a police report, was allegedly retaliated against by Woods and left Woods' employment.  Because the events at issue occurred over such a narrow window of time, and some of the events overlap, an understanding of the undisputed chronology is helpful.

### A. Day 1: Sunday - September 23, 2007

Plaintiff claims that Ned Bangura, a co-worker, grabbed her breasts and vagina while both were working in a laundry room.  Plaintiff also claims that she screamed and exited the laundry room to go to a patient's room, but that Bangura followed her and continued to harass her.

Plaintiff contacted her supervisor, Abdullah Kanneh ("Kanneh"), and revealed the incident around 9:00 P.M.  Kanneh told Carattini to report the incident to Woods' Human Resources Department.

### B. Day 2: Monday - September 24, 2007

Carattini was not scheduled to work on that day.  She met with Allegra Grant ("Grant"), a manager in Woods' Human

---

exchanging paperwork); Brown v. Sunoco Logistics Partners, L.P., No. 05-2262, 2006 WL 1308295 (E.D. Pa. May 10, 2005) (summary judgment granted for employer on plaintiff's claim that colleague repeatedly looked at her chest, rubbed her shoulder and patted her back).  Plaintiff discussed the Bueale incident with Allegra Grant on September 24, 2007.  According to Carattini, Bueale was never disciplined for this incident.

Resources Department.  Grant obtained a written statement from
Carattini describing the events of September 23, 2007.

### C. Day 3: Tuesday - September 25, 2007

Carattini was not scheduled to work on this day.
Plaintiff signed her first EEOC charge alleging harassment based
on the events of September 23, 2007.

### D. Day 4: Wednesday - September 26, 2007

Carattini met again with Grant, answered additional
questions and signed an additional statement regarding the
September 23, 2007, incident.  On this same day, Woods changed
Plaintiff's work assignment to an assignment that would separate
her from Bangura.

Carattini claims that when she appeared at two other
buildings on the campus where she had been re-assigned, she was
told by persons in charge that there were no positions available
to her in these buildings.

Also on this date, Plaintiff filed a police report
regarding the Bangura incident on September 23, 2007.

### E. Day 5: Thursday - September 27, 2007

Grant interviewed Bangura to obtain his statement.
Bangura denied the allegations.  Grant began interviewing other
witnesses to investigate Carattini's allegations.  Plaintiff was
scheduled to work on this day, but called out and did not come to
work.

## G. Day 6: Friday - September 28

Plaintiff was scheduled to work and met with Grant early in the day.  Plaintiff claims that when she came to see Grant, Bangura was also there.  Plaintiff claims there was no security for her and at that moment she became uncomfortable, nervous, stressed, anxious, feared for her safety and was unable to concentrate on her work-related assignments.

Carattini left Woods premises and resigned her position.[2]  Also on this day, Plaintiff signed a second EEOC charge alleging retaliation.

At some point on September 28, 2007, Carattini was offered the seven to three shift in an all female building, where men are not permitted to work.[3]

*     *     *

Distilled to its essence, Plaintiff's claim of discrimination is based on the September 23, 2007, incident with Bangura.  Plaintiff's retaliation claim is based on the lack of work for her at the other buildings on September 26, 2007 and

---

[2]    The parties dispute if Plaintiff actually resigned on September 28, 2007 or a few days later on October 4, 2007.  Viewing all evidence in the light most favorable to the Plaintiff, the Court will assume Plaintiff resigned on September 28, 2007.

[3]    "I was offered the seven to three after I had requested to – after I requested several times I was offered that position because of the event that happened, that took place." (Pl.'s Dep at 122:21-25.)  Plaintiff also admitted she did not accept the transfer to the seven to three shift. (Id. at 124:1-4.)

purportedly when she ran into Bangura at Grant's office on September 28, 2007.  Of the five days which elapsed between the September 23, 2007, incident and Plaintiff's resignation on September 28, 2007, she only worked one full day.  The record indicates that Plaintiff was paid for her regular shifts during the six day period in question.[4]

## III. MOTION FOR SUMMARY JUDGMENT

Woods moves for summary judgment on all claims.  It argues that it cannot be held liable for any alleged harassment of Carattini because prior to September 24, 2007, it was not on notice of any alleged harassment towards Carattini, that once it learned of Carattini's complaint it took adequate remedial action immediately, including conducting a full investigation and offered her a different work assignment away from the alleged

---

[4]      Defendant Woods claims that Carattini's allegations of harassment have repeatedly changed. Defendant notes that at her unemployment hearing, for the first and only time, Carattini claimed that Bangura raped her, causing her to resign from Woods. (Def.'s SOF at ¶ 82; Ex. BB Unemployment Compensation Board Review transcript at 4.)  Carattini denied making this statement at her deposition.  However, in her briefs related to the instant motion, she admitted making the statement. (Def.'s SOF at ¶ 86; Pl.'s SOF at ¶ 86.)  Also, Defendant notes that at the unemployment hearing Plaintiff stated she could not recall specific events where Bangura harassed her, but later remembered such incidents during her March 2009 deposition. (Def.'s SOF at ¶ 83-85.)

Given that at this the stage of the proceedings, the evidence is viewed in the light most favorable to the Plaintiff, the Court will not consider, in its ruling on the motion for summary judgment, the Defendant's assertion that Plaintiff's version of the events has changed over time.

harasser. Woods further argues that Carattini has failed to produce evidence sufficient to support her claim of retaliation.

## A. Summary Judgment standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. <u>Id.</u> at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." <u>El v. Se. Pa. Transp. Auth.</u>, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." <u>Conoshenti v. Pub. Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 140 (3d Cir. 2004) (quoting <u>Singletary v. Pa. Dept. of Corrections</u>, 266 F.3d 186,

192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in [Rule 56]-set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## B. Count I - Hostile Work Environment[5]

### 1. Hostile work environment legal standard

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment," a hostile work environment exists and Title VII has been violated. Id. (internal quotation and citation omitted).

To establish a hostile work environment claim against Woods under Title VII, Carattini must establish the following

---

[5]     For purposes of analyzing this claim, the Court views the facts in the light most favorable to the non-moving party, Carattini.

five elements: "(1) [she] suffered intentional discrimination because of . . . her sex; (2) the discrimination was pervasive or [severe];[6] (3) the discrimination detrimentally affected [Carattini]; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability existed." Andreoli v. Gates, 482 F.3d 631, 643 (3d Cir. 2007); Knabe v. Boury Corp., 114 F.3d 407, 410 (3d Cir. 1997).

Defendant contends that Plaintiff is unable to establish the second and fifth prongs needed to sustain a hostile work environment.

## 2. Severe or pervasive prong

In support of her claim, Plaintiff points to the September 23, 2007, incident where Bangura purportedly grabbed her vagina and breasts.

To satisfy the second prong of a hostile work environment claim, "the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment." Weston v. Pennsylvania, 251 F.3d

---

[6]    The Third Circuit has "often stated that discriminatory harassment must be 'pervasive and regular.' But the Supreme Court's standard is 'severe or pervasive.' The difference is meaningful and the Supreme Court's word controls, so [the Court] uses the severe or pervasive standard here." Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006); see also Pa. State Police v. Suders, 542 U.S. 129, 133 (2004).

420, 426 (3d Cir. 2001) (citing <u>Meritor Sav. Bank FSB v. Vinson</u>, 477 U.S. 57, 67 (1986)).

A court should consider several factors in determining whether an environment is hostile or abusive, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; [and] whether it unreasonably interferes with an employee's work performance.'" <u>Id.</u> (quoting <u>Harris</u>, 510 U.S. at 23 (1993)).

Whether conduct is pervasive should be determined based on the totality of the circumstances. <u>Harris</u>, 510 U.S. at 23. Isolated or sporadic incidents, unless extremely serious, and offhand comments are not sufficient to sustain a claim. <u>Caver v. City of Trenton</u>, 420 F.3d 243, 262 (3d Cir. 2005).

Plaintiff's evidence, by definition, cannot show that she was harassed pervasively in that it is supported by only one incident. Nor does Bangura's single unwelcomed contact with Plaintiff's vagina and breasts, albeit totally inappropriate, rise to the level of severity required to support a claim for hostile work environment. <u>See, e.g.</u>, <u>Saidu-Kamara v. Parkway Corp.</u>, 155 F. Supp. 2d 436, 439-40 (E.D. Pa. 2001) (Joyner, J.) (granting summary judgment on hostile work environment claim when plaintiff asserted that her supervisor: (1) touched her breast, told her that she looked "fresh" and propositioned her to join

-10-

him later that evening; (2) made suggestive comments about plaintiff's eyes and offered his financial assistance if plaintiff would go out with him; (3) removed a bottle of wine from his pants, offered plaintiff a drink and asked her to join him at a hotel where they could have a "good time;" and (4) patted plaintiff on the breast and buttocks after complimenting her on good work); <u>Swanson v. Nw. Human Servs., Inc.</u>, No. 05-CV-3054, 2006 WL 3354145, at *3 (E.D. Pa. Nov. 30, 2006)(Tucker, J.)(no hostile work environment created where defendant told plaintiff he looked good in his jeans once, grabbed his buttocks and asked him on dates over a two month period); <u>McGraw v. Wyeth-Ayerst Lab.</u>, No. 96-5780, 1997 U.S. Dist. LEXIS 20813, at *16-18 (E.D. Pa. Dec. 30, 1997) (Reed, J.) (supervisor's repeated requests for a date, kissing Plaintiff without her consent, "forcing his tongue into her mouth" on one occasion, and touching Plaintiff's face not severe enough to create hostile work environment); <u>Bauder v. Wackenhut Corp.</u>, No. 99-1232, 2000 U.S. Dist. LEXIS 4044, at *13 (E.D. Pa. Mar. 23, 2000) (Buckwalter, J.) (allegations that supervisor grabbed plaintiff's buttocks and male co-workers discussed the location of plaintiff's tattoos were insufficient to establish a hostile work environment); <u>see also</u> <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 463-65 (6th Cir. 2000) (supervisor's rubbing employee's shoulders, grabbing

buttocks, and offensive comments not pervasive or severe).[7]

Under these circumstances, Carattini has failed to provide evidence from which a jury could find that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [were] sufficiently severe or pervasive to alter the conditions of the victim's employment." Harris, 510 U.S. at 21. Accordingly, the Court will grant Defendant's motion for summary judgment regarding plaintiff's hostile work environment claim.[8]

### 3. Respondeat superior liability prong

Even assuming arguendo the harassment was pervasive or severe, Carattini cannot point to evidence sufficient to allow a jury to find that the fifth element, respondeat superior liability, has been established. An employer is not vicariously liable to a victim of sexual harassment when the harassment is done by a co-worker as opposed to a manager. Knabe, 114 F.3d at

---

[7]    The Court notes that Plaintiff cites no cases in briefing, or during oral argument, where conduct similar to that of her co-workers was found to be severe or pervasive harassment. Rather, Plaintiff relies only on conclusory statements in an attempt to satisfy this burden.

[8]    Plaintiff also appears to conflate Bueale and Bangura's conduct into a hostile work environment. While it is true that in order to show a hostile work environment Plaintiff need not show that each actor's conduct was pervasive and/or on-going, see West v. Phila. Elec. Co., 45 F.3d 744, 756 (3d Cir. 1995), Plaintiff may not simply point to the occurrence of discrete and isolated acts of intentional discrimination by different actors, at different times, under different circumstances. More is needed to show that, under the totality of the circumstances, Harris, 510 U.S. at 23, the work environment interfered with Plaintiff's performance.

411.  The employer will only be liable for its own behavior vis-a-vis the harassment.  Thus, Carattini must establish Woods' liability by showing that "management-level employees had actual or constructive knowledge about the existence of a sexually hostile work environment and failed to take prompt and adequate remedial action." Id.

### a. Actual notice of the Bangura incident

It is undisputed that Woods first received actual notice of the Bangura incident when Carattini called her supervisor on September 23, 2007, and notified the Human Resources Department on September 24, 2007, that she was harassed by Bangura on September 23, 2007.[9]

### b. Constructive notice of the Bueale incident

To establish constructive notice, the plaintiff can either prove: (1) management-level employees were provided with enough information to "raise a probability of sexual harassment in the mind of a reasonable employer," or (2) "the harassment is so pervasive and open that a reasonable employer would have had to be aware of it." Kunin v. Sears Roebuck & Co., 175 F.3d 289, 294 (3d Cir. 1999).  Focusing on the first possibility, "'a supervisor's knowledge generally will be imputed to the company

---

[9]    At that time, Carattini also told Human Resources that she was harassed by Bueale in early September 2007 and that she had relayed the incident to Kanneh, her immediate supervisor, but that Kanneh had not taken any remedial action.

for purposes of liability only if the supervisor is at a sufficiently high level in the company hierarchy.'" Anderson v. Deluxe Homes of Pa., Inc., 131 F. Supp. 2d 637, 651 (M.D. Pa. 2001) (quoting Bishop v. Nat'l R.R. Passenger Corp., 66 F. Supp. 2d 650, 667 (E.D. Pa. 1999)).

Carattini claims she reported the Bueale incident in early September 2007 to Kanneh, who failed to report the incident to Human Resources. The record indicates that Kanneh did not transmit the complaint up the chain of command. Nor was the episode so open or notorious that Woods' management should have become aware of it. Under these circumstance, it is unlikely Woods had constructive notice of the harassment.

### c. Remedial action

Plaintiff argues that Woods had knowledge of the Bueale incident in early September 2007, but failed to take any remedial action. Consequently, Plaintiff contends that Defendant was on notice of a hostile work environment and failed to prevent the Bangura incident.

Prompt remedial action is conduct reasonably calculated to prevent further harassment. Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997) (an employer is liable for a co-worker's harassment if the employer was "negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment").

Concerning the Bueale incident in early September 2007, although no remedial action was taken afterwards, Plaintiff admits that, after the one incident, Bueale did not harass her again.  In fact, Plaintiff indicated to Grant that she no longer had any issues with Bueale and did not express any desire to be separated from him. (Pl.'s Dep. at 130:7-18.)  Therefore, Defendant cannot be liable where no harassment occurred after the incident was reported to Woods' management.

Concerning the Bangura incident, immediately after receiving actual notice from Carattini of the Bangura incident, Woods took effective action.  Grant met with Bangura and Bueale and questioned them about the allegations.  Grant also met with each person Carattini identified as a witness and other individuals who worked with Carattini.  Not one person claimed to have witnessed the alleged harassment by Bueale an Bangura. Moreover, immediately after Plaintiff notified Defendant, Woods' management reorganized Carattini's work schedule so that she would no longer have to work with Bangura.  Finally, Woods separated Plaintiff from Bangura by temporarily reassigning her to different buildings and offering her a different shift in an all female building. Weston, 251 F.3d at 427 ("when an employer's response stops the harassment, there can be no employer liability under Title VII"); Kunin, 175 F.3d at 294.

Plaintiff attempts to impute liability on Woods for

-15-

failing to prevent the Bangura incident because of Defendant's actual notice of the Bueale incident. In other words, Plaintiff argues, because Kanneh, Carattini's immediate supervisor, had been told by Carattini of Bueale's harassment but failed to take any remedial action, Woods is liable for Bangura's subsequent harassment of Plaintiff. This argument is unavailing.

Even assuming that Woods had actual or constructive notice of the Bueale incident, Woods was not on notice that Bangura, a different actor, would commit an act of intentional harassment against Carattini, at a later date and under different circumstances.

It is clear to the Court that Woods' remedial actions were undertaken promptly and were sufficient to prevent further harassment. See Huston v. P & G Paper Prods. Corp., 568 F.3d 100 (3d Cir. 2009) (summary judgment affirmed where employer launched an investigation on the same day the complaint was filed, the plaintiff was moved to a different location so that she would not have to work with alleged harassers and management interviewed all the individuals plaintiff mentioned in her complaint); McCloud v. UPS, Inc., 328 Fed. Appx. 777 (3d Cir. 2009)(non-precedential) (summary judgment for employer affirmed where employer investigated claim within 24 hours of plaintiff's report and interviewed all the employees in the area, even though no one was punished because the investigation was inconclusive).

Thus, Carattini cannot point to evidence sufficient to allow a jury to find that the fifth element, respondeat superior liability, has been established. Because Plaintiff cannot prove the second and fifth prongs of her hostile work environment claim, summary judgment will be granted in favor of the Defendant.

### C. Count II - Retaliation

Plaintiff argues that Woods retaliated against her for her complaints of sexual discrimination and that Woods is therefore liable under Title VII. She claims that, after she complained of Bangura's sexual harassment, she was transferred from one building to the next where she was not needed and where she was told to return to the Human Resources office. (Pl.'s Br. at 31-40.) Plaintiff also claims: (1) she was informed by Grant that she was not needed to work in any other building on Defendant's campus; (2) Woods refused to permit her to transfer shifts and insisted that she remain working on the same shift as Bangura; (3) she came face to face with Bangura on September 28, 2007, which made her uncomfortable, and (4) she felt compelled to resign as a result of the working conditions. She claims that Woods' inaction was so severe that it rose to the level of a constructive discharge.

#### 1. Legal standard

Claims of retaliation, based on indirect evidence, in

employment are governed by the familiar McDonnell Douglas framework. Weston, 251 F.3d at 432. To establish a prima facie case of retaliation under Title VII, "an employee must prove that (1) she engaged in a protected employment activity, (2) her employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a "causal link" exists between the adverse action and the protected activity." Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007). "[A] plaintiff claiming retaliation . . . must show that a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006).

### 2. Analysis

#### a. Protected employment activity

Here, it is undisputed that Plaintiff engaged in a protected employment activity when she complained to Woods' management about Bangura's sexual harassment. Id. at 343 ("Opposition to discrimination can take the form of informal protests . . . including making complaints to management."). Therefore, the Court proceeds to examine whether Carattini has proffered sufficient evidence of the second two elements of retaliation to survive Defendant's motion for summary judgment.

### b. Adverse employment action

Plaintiff fails to point to sufficient evidence that Woods took an adverse employment action after, or contemporaneous with, the protected activity. She first claims that she was transferred from Brown Hall (the building she normally worked in), but she conceded that the transfer was made at her request. (Def.'s SOF at ¶ 54-55; Pl.'s SOF at ¶ 54-55.) Carattini also claimed that it was retaliatory to move her from building to building while the investigation was ongoing so that she and Bangura would not work together. However, she conceded that she requested at least one of these transfers, and the evidence reveals Woods' management was attempting to implement a workable solution and find a regular location for Carattini to work in a very short time frame. Moreover, the Court emphasizes here that Plaintiff only worked one full day between the time she reported the harassment to Grant and when she filed the charge of retaliation with the EEOC and resigned.[10] (Def.'s Mot. at 22

---

[10] Plaintiff also claims that it was retaliatory to prevent her from going on trips. However, she conceded that it was one trip and she did not go because the client to which she was assigned was not permitted to attend, and therefore, she, as part of her regular duties, had to remain to supervise the client. (Def.'s SOF at ¶ 59.) She also admitted that no one in the building knew that she had filed any complaint of discrimination. (Pl.'s Dep. at 195:5-10; Def.'s SOF at ¶ 59.) Plaintiff also claims she saw Bangura in the Human Resources Department, which made her uncomfortable, but had no evidence that he was purposely called to the area so that the two would interact. She conceded that he did not approach her or say anything to her at that time. (Id. at ¶ 60.)

n.6.)

Finally, Plaintiff claims that Woods retaliated against
her because it did not offer her the shift she desired until four
days after she complained about the harassment.  However,
Carattini admits that on the sixth day after she reported the
Bangura incident, and only on her second day back to work, Woods
offered her the seven to three shift that she had previously
requested.  Yet, Plaintiff turned the offer down and resigned
instead.  Finally, Plaintiff did not lose any pay during this
time period or suffer some other pecuniary loss.  Thus, Woods
acted promptly under the circumstances and its actions were not
retaliatory.  See Amati, 2007 WL 3256850, at *23 (finding that
the refusal to offer plaintiff the daylight shift was not
retaliatory).

The Court agrees with the Defendant that these
incidents are not materially adverse employment actions.  The
incidents comprised of were minor and occurred against the
backdrop of Woods seeking to separate Plaintiff from the alleged
harasser.  Under these circumstances, the Court concludes that a
reasonable employee would not be dissuaded from filing a
complaint.

Accordingly, Plaintiff has failed to establish a prima
facie case of retaliation.  Assuming that Plaintiff did, Woods

has offered legitimate, non-discriminatory reasons for its actions, and Plaintiff has not met her burden of pointing to specific evidence in the record from which a reasonable jury could find pretext.

### 3. Constructive discharge

To establish a constructive discharge claim an employee must demonstrate that the employer knowingly permitted conditions of discrimination in the workplace "so intolerable that a reasonable employee would be forced to resign." Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1232 (3d Cir. 1988) (citation omitted). An employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge. Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992). Instead, the focus is on the reasonable person, Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1162 (3d Cir. 1993), and courts employ an "objective test to determine whether an employee can recover on a claim of constructive discharge." Duffy v. Paper Magic Group, 265 F.3d 163, 167 (3d Cir. 2001).

Courts have considered a number of factors as indicative of constructive discharge: (1) a threat of discharge; (2) suggestions or encouragement of resignation; (3) demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations. Clowes, 991 F.2d at 1161.

Plaintiff cannot point to any evidence in the record that she was constructively discharged.  Assuming _arguendo_ the alleged harassment was severe or pervasive, Carattini's complaint of sexual harassment was promptly investigated and Woods' management was working to remedy the situation almost immediately after learning of Bangura's actions.  Carattini was transferred, but only temporarily, and in an attempt to alleviate the situation and satisfy Plaintiff's request.

Although Carattini later protested the transfers, there is no sign that she sought assistance from someone above Grant and other Human Resources Department workers. See, e.g., Goss v. Exxon Office Systems Co., 747 F.2d 885, 888 (3d Cir. 1984) (constructive discharge found where supervisor repeatedly verbally abused plaintiff, questioned her abilities and stated that he doubted she would be able to manage motherhood and a career. Plaintiff sought redress with higher levels of management pursuant to the company's "open door" policy, but to no avail. After several meetings regarding her concerns with her supervisor, plaintiff was informed that she was being removed from her territory. She was told that her options were to accept another far less attractive, less lucrative territory or to quit.).

Plaintiff was not: (1) threatened with discharge; (2) encouraged to resign; (3) demoted or received a reduction in pay;

(4) involuntarily transferred to a less desirable position; (5) subject to altered job responsibilities; or (6) subject to unsatisfactory job evaluations. <u>Clowes</u>, 991 F.2d at 1161.

Under these circumstances, a reasonable jury could not conclude that the conditions faced by Carattini during the six day period in question were so intolerable that a reasonable employee facing the same conditions would leave the job. <u>See Jainlett v. CVS Corp.</u>, No 06-4196, 2008 WL 2929155 (E.D. Pa. July 30, 2008) (Robreno, J.) (finding no constructive discharge where an employee's hours were temporarily reduced, plaintiff did not seek help from upper management, change in hours was not presented in a confrontational manner).

Therefore, Wood's motion for summary judgment will be granted as to Carattini's claim of constructive discharge.

## IV. CONCLUSION

For the reasons stated above, Woods' motion for summary judgment will be granted. An appropriate order will follow.